IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILIP POE**<br>60 Cornell Road<br>Bala Cynwyd, PA 19004<br><br>and<br><br>**GRACIELA SLESARANSKY-POE**<br>60 Cornell Road<br>Bala Cynwyd, PA 19004<br><br>Plaintiffs,<br><br>vs.<br><br>**ANTHONY F. BUFFA, individually and<br>d/b/a Endeavor Capital Management**<br>45 Rockefeller Plaza, Suite 2000<br>New York, NY 10111<br><br>and<br><br>**ENDEAVOR CAPITAL<br>MANAGEMENT HOLDINGS, LLC**<br>45 Rockefeller Plaza, Suite 2000<br>New York, NY 10111<br><br>and<br><br>**ENDEAVOR CAPITAL<br>MANAGEMENT, LLC**<br>101 Birch Hill Road<br>Weston, CT 06883<br><br>Defendants. | **19    5379**<br><br>CIVIL ACTION NO.<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

This case involves fraudulent conduct wherein Anthony F. Buffa ("**Buffa**"), individually

and though his wholly-owned company Endeavor Capital Management Holdings, LLC

("**ECMH**"), and perhaps other entities he formed and controlled, took advantage of Plaintiffs

Philip Poe and Graciela Slesaransky-Poe and engaged in ongoing and continuing fraud. Specifically, Buffa made false statements and misrepresentations in order to induce Plaintiffs to give him $100,000.00 -- a significant portion of their life savings -- as an "investment" in ECMH. Buffa solicited Plaintiffs' investment in ECMH by representing to Plaintiffs that ECMH had a significant portfolio of lucrative investments.

When the note provided to Plaintiffs by Buffa and ECMH matured, Plaintiffs made a demand for repayment along with accrued interest. Not only did Buffa and ECMH refuse to return Plaintiffs' money, but Plaintiffs have come to learn that Buffa caused a significant portion of ECMH's portfolio to be transferred out of ECMH for the benefit of Buffa and perhaps other individuals. As a result of Buffa and ECMH's conduct, Plaintiffs have suffered, and continue to suffer, significant monetary damages.

## Parties

1.     Plaintiff Philip Poe is an adult individual with a residential address as captioned.

2.     Plaintiff Graciela Slesaransky-Poe is an adult individual with a residential address as captioned.

3.     Plaintiffs are husband and wife.

4.     Plaintiffs are both domiciled in the Commonwealth of Pennsylvania.

5.     Defendant Buffa is an adult individual with an address as captioned.

6.     Defendant Buffa is, upon information and belief, domiciled in New York.

7.     Defendant Buffa operates Endeavor Capital Management as a sole proprietorship.

8.     Defendant ECMH is a Delaware limited liability company with an address as captioned.

9.     Defendant ECMH has offices in both New York and Indiana.

10. Upon information and belief, Defendant Buffa owns 100% of the membership interests of Defendant ECMH.

11. Defendant ECMH is, upon information and belief, domiciled in either Delaware, New York, and/or Indiana.

12. Defendant Endeavor Capital Management, LLC ("**ECM**") is, upon information and belief, a Connecticut limited liability company with an address as captioned.

13. Upon information and belief, Defendant Buffa owns 100% of the membership interests of Defendant ECM.

14. Defendant ECM is domiciled in Connecticut and/or New York.

### Jurisdiction & Venue

15. This Honorable Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.A. § 1331 and 15 U.S.C.A. § 78aa because Plaintiffs allege causes of action under the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78a *et seq*.

16. This Honorable Court has supplemental jurisdiction over the state law causes of action herein.

17. This Honorable Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332 as there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

18. Defendants are subject to personal jurisdiction and venue in this Honorable Court because the causes of action set forth herein arise from Defendants' contacts within the Commonwealth of Pennsylvania and, specifically, this judicial district.

19. Defendants are further subject to personal jurisdiction and venue in this Honorable Court because the transactions and occurrences giving rise to the causes of action set forth herein

occurred within the Commonwealth of Pennsylvania and, specifically, this judicial district.

20.     Plaintiffs demand a jury on all issues so triable.

## Facts

21.     Plaintiffs incorporate the foregoing paragraphs as though fully set forth at length herein.

22.     Buffa holds himself out as a venture capitalist and a private equity investment manager.

23.     In or around September, 2018, Buffa and agents of ECMH began soliciting Plaintiffs to purchase unregistered securities in ECMH.

24.     Specifically, on or about September 5, 2018, Buffa and ECMH sent Plaintiffs a "Memorandum of Terms for Private Placement of Senior Secured Equity Linked Promissory notes Issued by Endeavor Capital Management Holdings, LLC and Guaranteed personally by the full faith and Credit of Anthony F. Buffa, sole founder, CEO and 100% shareholder of Endeavor Capital Management Holdings, LLC and its predecessor entities, Endeavor Capital Management, Inc a Michigan C Corporation established in April of 1988 and sun-setted in mid 2013 and Endeavor Capital Management, LLC, a Connecticut LLC established in January of 1997, as a successor entity to Endeavor Capital Management, a sole proprietorship founded and operated by Anthony Buffa beginning in April of 1988" (the **"Memorandum of Terms"**).

25.     A true and correct copy of the Memorandum of Terms is attached hereto and made a part hereof as Exhibit "A."

26.     The Memorandum of Terms included a specific pledge of ECMH's 60% stake in Zenganic, Inc. (**"Zenganic"**) as well as other entities including, but not limited to, MCC Development, Inc.; BioFuse Medical Technologies, Inc.; and Jointechlabs, Inc.

27.     The Memorandum of Terms also stated that the use of the proceeds of Plaintiffs' investment was to support Zenganic and its cannabis business.

28.     The Memorandum of Terms also stated that the note bore interest at the rate of twelve percent (12%) per annum and that Plaintiffs were entitled to repayment of all principal and interest on March 31, 2019.

29.     Indeed, the Memorandum of Terms explicitly stated, "All Notes regardless of issuance date which may occur between April 2, 2018 and the Maturity Date, shall mature and be payable in full with accrued interest on March 31, 2019."

30.     Moreover, by email dated October 22, 2018, Buffa reconfirmed the Memorandum of Terms and made additional representations to Plaintiffs regarding the unregistered securities.

31.     A true and correct copy of the October 22, 2018 email correspondence (the **"October 2018 Email"**) is attached hereto and made a part hereof as Exhibit "B."

32.     In addition, as set forth in the Memorandum of Terms, ECMH was to make an investment in Ad2pos of which Buffa was the "founding Chairman & Acting CEO."

33.     ECMH and Buffa represented to Plaintiffs that Plaintiff Philip Poe would be hired as a chief technology officer for Ad2pos beginning in October 2018.

34.     ECMH and Buffa represented to Plaintiffs that Plaintiff Philip Poe would initially be paid $10,000.00 per month in connection with his position at Ad2pos.

35.     Upon information and belief, ECMH never invested additional money in Ad2pos.

36.     Plaintiff Philip Poe was never hired by Ad2pos and never received compensation from Ad2pos.

37.     ECMH and Buffa also represented to Plaintiffs that their investment would be "matched" as an equity stake based upon investments made by other individuals.

38.     Plaintiffs' investment was never matched as an equity stake based upon investments made by other individuals.

39.     ECMH and Buffa continually guaranteed to Plaintiffs that they would receive repayment of their investment.

40.     All of the aforementioned statements made by ECMH and Buffa were false.

41.     ECMH and Buffa knew such aforementioned representations were false.

42.     ECMH and Buffa made such misrepresentations with the intent that Plaintiffs rely upon them.

43.     Upon information and belief, ECMH and Buffa also omitted several material facts when inducing Plaintiffs to invest with them.

44.     Plaintiffs relied upon ECMH and Buffa's misrepresentations when deciding to invest the sum of $100,000.00 with Defendants.

45.     In reliance upon the representations made by ECMH and Buffa in the Memorandum of Terms and October 2018 Email, Plaintiffs wired the sum of $100,000.00 to ECMH and Buffa in October, 2018.

46.     Buffa and ECMH accepted the $100,000.00 from Plaintiffs.

47.     Plaintiffs would not have invested with ECMH and Buffa absent the representations made in the Memorandum of Terms and October 2018 Email.

48.     After wiring the funds to ECMH and Buffa, Plaintiffs discovered that ECMH's ownership interest in Zenganic was a misrepresentation.

49.     Upon information and belief, ECMH's ownership interest in the other entities listed in the Memorandum of Terms was also a misrepresentation.

50.     Plaintiffs have also learned that despite the fact that ECMH does not own a 60%

interest in Zenganic, ECMH caused $165,000.00 of funds to be transferred to Zenganic.

51.     The $165,000.00 was paid to Zenganic by ECMH without any signed documentation whatsoever.

52.     On March 31, 2019, Plaintiffs made a demand for repayment of their principal and interest.

53.     Plaintiffs made additional demand for the principal and interest on July 12, 2019.

54.     A true and correct copy of the July 12, 2019 demand letter is attached hereto as Exhibit "C."

55.     As of November 13, 2019, ECMH and Buffa owe Plaintiffs the sum of $116,226.28, itemized as follows:

| | |
|---|---|
| Principal: | $100,000.00 |
| Interest: | 16,226.28 |
| TOTAL: | $116,226.28 |

* Interest continues to accrue at the rate of $49.32 per diem.

56.     As of the date hereof, ECMH and Buffa have failed and refused to repay any sum whatsoever to Plaintiffs.

57.     Upon information and belief, ECMH and ECM are undercapitalized.

58.     Upon information and belief, Buffa has substantially intermingled funds of ECMH and ECM with his own personal funds and/or used the funds of ECMH and ECM for personal expenses.

59.     Further, Buffa has used ECMH and ECM to perpetuate fraud.

### Count I - Breach of Contract

60.     Plaintiffs incorporate the foregoing paragraphs as though fully set forth at length

herein.

61.     The Memorandum of Terms constitutes a binding contract between Plaintiff and Defendants.

62.     As set forth at length above, Defendants breached the contract by, among other things, failing to repay Plaintiffs in accordance with the Memorandum of Terms and failing to fulfill promises made with regard to Ad2pos.

63.     As a result of Defendants' breach of the contract, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs Philip Poe and Graciela Slesaransky-Poe respectfully request that this Honorable Court enter judgment in their favor and against Defendants Anthony F. Buffa, individually and d/b/a Endeavor Capital Management; Endeavor Capital Management Holdings, LLC; and Endeavor Capital Management, LLC, jointly and severally, in the sum of $116,226.28 plus pre- and post-judgment interest at the contractual rate, costs of suit, and any other relief this Honorable Court deems just and proper.

## Count II - Unjust Enrichment

64.     Plaintiffs incorporate the foregoing paragraphs as though fully set forth at length herein.

65.     Plaintiffs conferred a benefit upon Defendants by providing the sum of $100,000.00 to Defendants.

66.     Defendants benefitted from the moneys provided to them by Plaintiffs.

67.     It would be unjust for Defendants to retain Plaintiffs' funds without repayment of same.

WHEREFORE, Plaintiffs Philip Poe and Graciela Slesaransky-Poe respectfully request that this Honorable Court enter judgment in their favor and against Defendants Anthony F. Buffa,

individually and d/b/a Endeavor Capital Management; Endeavor Capital Management Holdings, LLC; and Endeavor Capital Management, LLC, jointly and severally, in the sum of $100,000.00 plus pre-judgment interest, post-judgment interest, costs of suit, any other relief this Honorable Court deems just and proper.

## Count III - Fraud

68.     Plaintiffs incorporate the foregoing paragraphs as though fully set forth at length herein.

69.     As set forth at length above, ECMH and Buffa made several misrepresentations to Plaintiffs in order to induce Plaintiffs to invest money with them.

70.     Those misrepresentations included, but were not necessarily limited to:

(a)     That ECMH had ownership interests in several entities including, but not limited to, Zenganic; MCC Development, Inc.; BioFuse Medical Technologies, Inc.; and Jointechlabs, Inc.;

(b)     ECMH was to make an investment in Ad2pos and hire Plaintiff Philip Poe as its chief technology officer;

(c)     Plaintiffs' investment would be "matched" as an equity stake based upon investments by other individuals; and

(d)     Plaintiffs would receive repayment of their investment.

71.     All of the aforementioned representations were material to Plaintiffs' decision to invest money with Defendants.

72.     All of the aforementioned representations were false, and Defendants knew they were false at the time they were made.

73.     Defendants made such misrepresentations with the intent that Plaintiffs rely upon

them.

74.     Plaintiffs justifiably relied upon Defendants' misrepresentations when deciding to invest the sum of $100,000.00 with Defendants.

75.     Plaintiffs have been damaged as a result of their reliance upon Defendants' misrepresentations.

WHEREFORE, Plaintiffs Philip Poe and Graciela Slesaransky-Poe respectfully request that this Honorable Court enter judgment in their favor and against Defendants Anthony F. Buffa, individually and d/b/a Endeavor Capital Management; Endeavor Capital Management Holdings, LLC; and Endeavor Capital Management, LLC, jointly and severally, in the sum of $100,000.00 plus punitive damages, pre-judgment interest, post-judgment interest, costs of suit, any other relief this Honorable Court deems just and proper.

## Count IV - Securities Fraud

76.     Plaintiffs incorporate the foregoing paragraphs as though fully set forth at length herein.

77.     Plaintiffs are purchasers of interest in ECMH.

78.     Such interest in ECMH is an unregistered security.

79.     As set forth at length above, ECMH and Buffa made several misrepresentations to Plaintiffs in order to induce Plaintiffs to invest money with them.

80.     Those misrepresentations included, but were not necessarily limited to:

(a)     That ECMH had ownership interests in several entities including, but not limited to, Zenganic; MCC Development, Inc.; BioFuse Medical Technologies, Inc.; and Jointechlabs, Inc.;

(b)     ECMH was to make an investment in Ad2pos and hire Plaintiff Philip Poe

as its chief technology officer;

        (c)    Plaintiffs' investment would be "matched" as an equity stake based upon investments by other individuals; and

        (d)    Plaintiffs would receive repayment of their investment.

81.    All of the aforementioned representations were material to Plaintiffs' decision to purchase the unregistered securities.

82.    All of the aforementioned representations were false, and Defendants knew they were false at the time they were made.

83.    Defendants made such misrepresentations with the intent that Plaintiffs rely upon them.

84.    Plaintiffs justifiably relied upon Defendants' misrepresentations when deciding to invest the sum of $100,000.00 with Defendants.

85.    Plaintiffs have been damaged as a result of their reliance upon Defendants' misrepresentations.

WHEREFORE, Plaintiffs Philip Poe and Graciela Slesaransky-Poe respectfully request that this Honorable Court enter judgment in their favor and against Defendants Anthony F. Buffa, individually and d/b/a Endeavor Capital Management; Endeavor Capital Management Holdings, LLC; and Endeavor Capital Management, LLC, jointly and severally, in the sum of $100,000.00 plus punitive damages, pre-judgment interest, post-judgment interest, attorney's fees, costs of suit,

any other relief this Honorable Court deems just and proper.


**LUNDY, BELDECOS & MILBY, P.C.**

Date:  11/14 /2019          By:

**JESSICA M. GULASH, ESQUIRE**
PA ID #208463

450 N. Narberth Avenue, Suite 200
Narberth, PA 19072

(610) 668-0772
jgulash@lbmlaw.com

*Attorney for Plaintiffs*

Exhibit "A"

## MEMORANDUM OF TERMS FOR
## PRIVATE PLACEMENT OF SENIOR SECURED <u>EQUITY LINKED</u> PROMISSORY NOTES
## ISSUED BY
**Endeavor Capital Management Holdings, LLC and Guaranteed personally by the full faith and Credit of Anthony F. Buffa, sole founder, CEO and 100% shareholder of Endeavor Capital Management Holdings, LLC and its predecessor entities, Endeavor Capital Management, Inc a Michigan C Corporation established in April of 1988 and sun-setted in mid 2013 and Endeavor Capital Management, LLC, a Connecticut LLC established in January of 1997, as a successor entity to Endeavor Capital Management, a sole proprietorship founded and operated by Anthony Buffa beginning in April of 1988.**

### August 2018

This Memorandum of Terms (the "Memorandum") is intended to summarize certain terms under discussion with respect to a private placement to certain investors (the "Investors") of senior secured promissory notes issued by Endeavor Capital Management Holdings, LLC, a Delaware Limited Liability Company (the "Company or Endeavor"), and guaranteed by Anthony F. Buffa.

The terms summarized herein will be superseded in their entirety by the terms set forth in the definitive promissory notes to be issued and the definitive subscription agreement for the promissory notes. This Memorandum is intended to be evidence of a legally binding agreement and obligation on the part of Endeavor Capital Management Holdings, LLC and its 100% shareholder, Anthony F. Buffa, a resident of Indianapolis, Indiana, who is known to the Investor.

<u>Private Placement Terms</u>

I. <u>Promissory Notes</u>

| | |
|---|---|
| Instrument: | Senior secured promissory notes (" Senior Secured Notes or the Notes"). |
| Amount: | Up to $600,000 in principal amount of Senior Secured Notes, which amount may be increased to up to $1,000,000 at the discretion of the Company. Multiple closings may be held, and initial closing can occur with an amount of investment equal to or greater than $10,000.00. Endeavor may accept up to $1.0 million in subscription to the Senior Secured Notes. In the event of strong demand, Endeavor may request of the Holders of the first $1.0 million of Senior Secured Notes, to allow the Company to accept amounts in excess of this amount, and the Holders agree to not unreasonably withhold their consent. |

Use of Proceeds:                    The proceeds from these to be issued Senior Secured
                                    Promissory Notes will be used to fund ECMH's purchase of
                                    a fully diluted 60% equity interest in an established
                                    profitable and rapidly growing medicinal and recreational
                                    cannabis business, and an 80% interest in a closely related
                                    Hash business in the east bay of the San Francisco and
                                    Oakland metropolitan areas of California, in support of as
                                    rapid as possible profitable and un leveraged expansion
                                    statewide of this business. Proceeds will be used to make an
                                    up to $50,000 investment in the senior secured convertible
                                    promissory notes of www.ad2pos.com-newco, of which
                                    Anthony Buffa is the founding Chairman & Acting CEO.
                                    Proceeds may also be used to acquire additional ownership
                                    in MCC Development, Inc. ( aka www.hazmatbuildings.com
                                    ). Proceeds may also be used for up to $50,000 of senior
                                    secured convertible bridge loans with attached warrants in
                                    BioFuse Medical Technologies, Inc.
                                    www.biofusemedical.com in support of Endeavor's advisory
                                    contract and lead sponsorship of an up to $8.0 million equity
                                    funding of BioFuse currently being organized.  An initial
                                    senior secured convertible bridge loan investment of up to
                                    $50,000 into Jointechlabs, Inc. www.jointechlabls.com of
                                    which Endeavor is currently lead advisor on raising
                                    $750,000 of expansion capital in conjunction with IndieBio
                                    of San Francisco which is an existing Jointech Labs
                                    shareholder. Up to a $50,000 investment into the convertible
                                    preferred stock of Stemgenics, Inc. www.stemgenics.com, a
                                    company for which Endeavor is currently co-advising on the
                                    private placement of up to $20.0 million of equity financing.
                                    **Additional limited participations of up to $25,000 in the
                                    Litigation Lending agreement in support of LP,** which is
                                    at a critical phase due to the movement of motions to Federal
                                    District courts to benefit from recent US Supreme Court
                                    decisions which will strengthen the likelihood of
                                    successfully over turning previous unjust decisions by lower
                                    state courts. Endeavor's return potential from this Litigation
                                    Lending Agreement **exceeds $5.0 million** over the next 12 to
                                    60 months. Possible small seed investments of up to $50,000
                                    per company in the senior secured convertible promissory
                                    notes of other worthy Endeavor sponsored growth companies
                                    by which Endeavor is being engaged to render strategic,
                                    operational and financial advisory services in exchange for
                                    current income consulting fees, expenses recovery and most
                                    importantly equity ownership in these companies.  Recurring
                                    overhead expenses of ECMH prior to the completion of
                                    advisory assignments that generate current income.

| | |
|---|---|
| Debt Terms: | The Senior Secured Notes shall bear interest at the rate of 12% per annum, calculated for actual days elapsed in a 365 day year and compounded annually. Accrued interest would be paid in cash at maturity, or earlier at the discretion of Endeavor. Principal and interest would be due and payable on March 31, 2019 (the "Maturity Date"). All Notes regardless of issuance date which may occur between April 2nd, 2018 and the Maturity Date, shall mature and be payable in full with accrued interest on March 31, 2019. |
| Principal Source of Repayment: | Endeavor is earning increasing amounts of current income in excess of Endeavor's monthly overhead and is also in the process of selling one of its more mature and profitable investments www.insurent.com and also organizing a ten year long term loan facility to fund its initial equity investments in a growing portfolio of advisory clients that are paying Endeavor in both current retainer income and their equity, some of which can be liquified on a short to medium term basis with interested direct secondary co-investors or enterprise liquidity events to fund Endeavor's early retirement of its ten year loan notes. |
| Incremental Return Terms: | The holder of each Note shall be entitled to receive an additional amount of cash return following the full repayment of the Notes at a future date, at the point in time that Endeavor receives cash compensation for any portion of its 60% fully diluted ownership in Zenganic Inc. or any other of Endeavor's ownership interests in Cannabis related or other private business enterprises identified above in this term sheet or in which Endeavor develops a remunerative investment and consultative relationship in the future, using a portion of this loan facilities proceeds. The initial amount of the incremental return will be equal to not less than 20% of the realized capital gains, extraordinary current income, paid in either cash or marketable securities, to Endeavor or Anthony Buffa by any of the investments that a portion of the loan proceeds are used to finance, including but not limited to MCC Development, Inc. www.hazmatbuildings.com, Cybertimez Inc. www.cybertimez.com, Isurent Inc. www.insuent.com, BioFuse Medical Technologies, Inc. www.biofusemedical.com, www.ad2pos.com, www.eastbaymeds.net ( aka zenganics Inc. ) , Join Tech Labs, Inc. www.jointechlabs.com, Stemgenics, Inc. www.stemgenics.com, and www.genomicspersonalizedhealth.com and Advanced Magnet Labs, Inc. www.aml-enabled.com |

This incremental return shall be equal to one times the face amount of the Notes and shall be paid to the holder within ten business days following Endeavor's receipt of either cash dividends or cash compensation or freely marketable securities from the sale of some or all of Endeavor's equity ownership in any of it's growing list of portfolio investments. To the greatest extent possible, Endeavor will seek to have all incremental return arise from the sale of owned equity securities for cash, that should qualify for the benefits of Section 1202 of the Code, and or the distribution on a tax  free basis of freely tradeable marketable securities.

Following payment of this initial amount of incremental return equal to one times the Holder's Bridge Loan Participation amount, the Holder will be entitled to a 15% carried interest on Endeavor or Anthony Buffa realized gains up to a two times return of their Bridge Loan amount and thereafter a 10% carried interest up to a three times return, and thereafter a 5% carried interest up to a four times return and thereafter a 5% carried interest in perpetuity thereafter so long as Anthony Buffa or Endeavor owns an interest in the above described investments or new investments originated during the tenure during which the Bridge Loans are outstanding, and for which a portion of the loan proceeds are used to fund these investments.

As a point of clarification, the amount of carried interest that each investor receives once the carried interest waterfall has arrived at the 5% carry in perpetuity, will be their pro-rata share of the distributed gain, where their pro-rate share will be their percentage participation in the final amount of the Endeavor one year loan that has been used to finance the portfolio of companies from which the Holder is entitled to participate in carried interest. For example, if an investor has invested $100,000 in the one year notes, and the total amount of the one year notes is $1.0 million, then the investor would be entitled to 10% of all distributions of the carried interest category of 5% of distributed gains, since the Holders of the ten year notes will be entitled to their respective pro-rata share of either a 12%, 10%, 8%, 6%, 4%, or 2% carried interest on distributed gains.

Endeavor shall be required to allocate not less than 50% of any cash dividend payments or any other form of cash proceeds or freely marketable securities from the liquidation of it's owned equity in any of its portfolio companies, and or cash compensation related to the sale of Endeavor equity in Zenganic or a related Cannabis enterprise in which Endeavor is involved or the receipt of cash from Zenganic, Inc. by Endeavor or by Anthony Buffa, which may be paid to Endeavor or Anthony Buffa at a future date for advisory services rendered by Endeavor or paid to Anthony Buffa in his capacity as Chairman & CEO of Zenganic, Inc. except for the monthly recurring salary paid to Anthony Buffa, which amount shall not exceed $5,000.00 per month until such time as the Notes are paid in full and the incremental return is being distributed to investors.

To avoid confusion and unnecessary administrative burdens, the Incremental Return shall become due and payable at a future date following the full repayment of all the outstanding principal and interest on the Notes, which is anticipated to occur on or before March 31, 2019. To the extent that Endeavor attains liquidity and any capital recovery or gains from any of its other investments completed from this loan capital, or currently owned by Anthony Buffa or Endeavor, or received as compensation for services rendered, Endeavor would be obligated to pay out not less than 50% of these gains to fully satisfy initial repayment of the loan principal and minimum current return on the Notes, and then thereafter the incremental return requirements of these bridge loan notes explained above will take precendent over any incremental investments that Endeavor may elect to make.

Prepayment:            The Company may pre-pay the principal amount of the Notes with accrued and unpaid interest at any time at it's sole discretion. Even in the event of prepayment of the originally outstanding principal amount of the Notes with accrued interest, partial or full amounts of the Incremental Return as defined above shall become due and payable to the Holder of the Notes at the future dates when Endeavor or Anthony Buffa receive cash compensation from Zenganic, Inc. or any related or unrelated private enterprise in which Endeavor owns some or all of the equity or Endeavor or Anthony Buffa have provided advisory services and received current income and equity compensation in return.

Security Interest and Collateral:

The Senior Secured Note holders shall have a fully perfected first lien, on all tangible and intangible assets of the Company and Anthony Buffa as of the date of issuance of the Notes and which the Company may acquire during the time frame in which the Notes are outstanding and not fully repaid with accrued interest thereon.  The security interest shall in no way restrict the Company from pursuing advisory fee income or investing in the private securities of other enterprises, receiving licensing compensation for its technology, or entering into collaborative agreements for the enhancement of its tangible and intangible assets. Exhibit A of this Memorandum of Terms lists the tangible and intangible assets of Endeavor and Anthony Buffa in which the Holder of the Notes shall have a perfected first lien security interest.

Perfection of Security Interest:

Endeavor will establish with an escrow agent in Delaware which is Endeavor Capital Management Holdings, LLC state of origin, a UCC-1 perfected security interest with the collateral being held by the escrow agent on behalf of the participants in these promissory notes and Endeavor until such time as the principal and interest in the notes is fully repaid, after which the Incremental Return will be an unsecured obligation of  Endeavor and Anthony Buffa, but it will be a binding and enforceable obligation.

Key Man Life Insurance:

The Company shall secure a term life insurance policy on the life of  Anthony Buffa on or before July 30, 2018 of not less than $1.0 million of death benefit, with all expenses and premiums paid for by the Company. In the event of a claim and collection by the Company of such claim, the Company and or the estate of Anthony Buffa will pay 100% of the proceeds of any and all payments on the policy to repay any and all amounts of principal or interest that may be outstanding  on the Notes.

Default Rate:

In the event that Endeavor does not pay the Notes at maturity in full, with accrued interest thereon, the current rate of return on the notes will increase to 18% per annum, and be payable in cash monthly until the notes are paid in full, and the Incremental Return described above will still apply.

Double Dip Provision:

The holders of these initial bridge loan notes will at the time that the notes are repaid, have the opportunity to be paid their principal and accrued interest, and or exchange these maturing notes plus accrued interest for the new notes being offered to and issued to newer participants with the carried interest structure being 12%, 10%, 8%, 6%, 4% and 2% as compared to the 20%, 15%, 10%, 5% of these initial notes, resulting in a carried interest should the investor elect to remain involved in the ten year versions of these notes with a total carried interest of 32%, 25%, 18%, 11%, and 7% in perpetuity on the investments subject to these carried interest provisions.

II. Miscellaneous

Purchase Documentation:

The purchase of the Senior Secured Notes will be made pursuant to a Subscription and Note Purchase agreement that includes certain representations and warranties of Endeavor and it's 100% equity owner, Anthony Buffa and the relevant Investor(s) including as to such Investor's status as an "accredited investor" as defined by the Securities and Exchange Commission pursuant to Regulation D. Amendments could be made to the terms of the Senior Secured Notes with the consent of holders of a majority in interest of the Senior Secured Notes.

Expenses:

The Company will bear its own expenses arising from this offering and the pre-approved expenses of one counsel who is acting on behalf of the investor participants in the Senior Secured Notes. The investor counsel will be selected by Endeavor, unless an early subscriber to the Notes identifies an alternative counsel. Endeavor or another appropriate participating investor will select a law firm to act on behalf of the investor group in the Senior Secured Notes, and in doing so seek to minimize the legal expenses of this selected firm, while insuring that this investor counsel carefully reviews documents prepared by Endeavor counsel K&L Gates. To the extent that holders of the Senior Secured Notes elect to use other counsel, the expenses of said counsel will be paid by those investors along with any other expenses they may incur with respect to the purchase of Senior Secured Notes.

Finders:

The Company and each Investor would indemnify the other for any finder's fees for which that party is responsible,

except in the instance of pre-agreed to investment banking fees for services rendered under board approved engagement letters, and if and to the extent there has been a written agreement to incent appropriate finders to identify investors. At present Endeavor fully expects to place these notes with its historical co-investor relationships and does not anticipate any investment banking fees being paid.

Reporting:                    Anthony Buffa as Management of the issuer will provide no less than a short written update each calendar quarter to the note holders as to the financial status of the issuer, its portfolio companies and their and the issuers near and medium term operational and financial performance prospects and most recent accomplishments.  Anthony Buffa as CEO of the issuer and Guarantor of the Notes will be available 24x7 to answer questions that may be posed by holders of the notes.

Audited Financial Statements    Endeavor and it's portfolio companies shall provide within 180 days of the completion of each fiscal cycle audited financial statements.

Right of First Offer:           Note holders will be first to be offered additional financing securities to be issued by the issuer or its underlying adviser customers or others

Right of Participation:         Note holders will be entitled to participate in future financings in an amount not less than their participation in the notes.

Preferred Co-investment
Rights                      Note participants will be allowed a first look at all co-investment rights alongside Endeavor in each of its portfolio companies

Advisory Board
Representation:              The Senior Secured Note holders may elect to have one member of the Company's advisory board, which shall be a person mutually acceptable to both Endeavor and the Note Holders.

Participation                Buffa Family Trust                     $10,000

**Exhibit A: Listing of Anthony Buffa and Endeavor Capital Management Holdings, LLC Assets That Represent the Collateral in Which the Note Holders have an Unencumbered and Perfected First Lien Security Interest.**

Endeavor Capital Management Holdings equity override carried interest on the 5% of the fully diluted equity of www.insurent.com, which is a private profitable specialty insurance company based in New York City that Endeavor has been involved with since 2013. Insurent is currently being sold by Sandler O'Neill, a New York based investment bank specializing in financial services. The anticipated sale price for Insurent is to be approximately $35.0 million since Insurent has been consistently profitable for five years, is growing its revenue and profits, has no debt and has unencumbered positive cash of approximately $8.0 million and has just received regulatory approval to expand its specialty insurance services to California. Endeavor anticipates that following the return of capital to Endeavor investors on this investment, Endeavor's equity override will have a value of approximately $100,000.00.

Anthony Buffa ownership on a fully diluted basis of 45.5% of the equity of MCC Development Corporation, a North Carolina C Corporation, that Anthony Buffa and one of his Endeavor partners acquired 91% of on December 22, 2017. MCC Development's web site is www.hazmatbuildings.com and is referred to herein as MCC. MCC had annual revenues of approximately $1.7 million for calendar and fiscal 2017, and operated at a very slight positive cash flow after taking into account the compensation that its historical owner, who remains employed as CEO of MCC under a three year employment contract to act as head of sales and teach Endeavor partners involved in MCC operations on a daily basis the business. This former owner retains a 9% ownership interest in MCC.  MCC is on track to exceed $7.0 million in revenue for calendar and fiscal 2018, and earn in excess of $500,000.00 in profit, even following aggressive investments by management in personnel and systems to grow the company. MCC is debt free and has a positive cash balance of approximately $500,000.00 and is expected to grow revenue and earnings rapidly each year for the foreseeable future. Anthony Buffa is Chairman and CEO of

MCC and its co-control equity owner in partnership with one of Endeavor's operating partners, who also like Anthony owns 45.5% fully diluted of MCC, but unlike Anthony, this Endeavor partner presently works full time for MCC. Anthony receives a $24,000.00 per year salary and is entitled to 100% performance based bonus compensation from MCC, along with benefits and a personal automobile expense reimbursement allowance.

Anthony Buffa's 60% fully diluted ownership interest in a leading Cannabis business platform growth company named Zenganic and Cannvis operating profitably in the bay area of northern California.

The soon to be co-founded Genomics related operating company www.genomicspersonalizedhealth.com in which Endeavor is anticipating an initial co-founding ownership interest of 20%

Anthony Buffa's $15,000 cost basis investment in www.cybertimez.com series A convertible preferred stock. Endeavor also has a value added reseller agreement with Cybertimez.  Anthony Buffa estimates that the current value of this investment is approximately $30,000.00 and growing rapidly given the current and anticipated performance of the Company.

Anthony Buffa's approximately 20% fully diluted ownership of www.ad2pos.com. Anthony Buffa is Chairman of www.ad2pos.com-newco which is finalizing documentation and closing of its exclusive world-wide license of the functioning and in beta site commercial deployment of www.ad2pos.com technology with merchants and advertisers in North America, Canada, the Caribbean, Israel and Europe. www.ad2pos.com-newco is an in formation Delaware C Corp that Anthony Buffa is the Chairman and CEO of and will be the lead investor in.  www.ad2pos is the encore investment to Anthony Buffa's successful co-lead investor and largest shareholder role in Catalina Marketing Corporation www.catalina.com which Anthony's then venture firm Edelson Technology Partners funded in the seed phase in mid calendar 1985 at a post financing fully diluted enterprise value of $8.6 million. Catalina was cash flow negative for an additional five years, consuming approximately $12.5 million of venture equity and $9.0

million of venture lease capital, most of which Anthony Buffa raised for Catalina, but became profitable and cash flow positive in 1991 and effected a fully underwritten initial public offering of its common stock on the NYSE in March of 1992 at a fully diluted enterprise value of approximately $225.0 million.  Catalina's market value appreciated steadily to an approximately $2.0 billion prior to the technology market correction of March 2000, and after declining and then gradually recovering, Catalina was sold in a going private leveraged buyout to Hellman Friedman for $2.0 billion in cash in October of 2007.

Endeavor and Anthony Buffa are in the process of closing www.ad2pos.com-newco's first $1.5 million of convertible bridge loan capital, destined within 12 to 24 months to convert into Series A Convertible Preferred Stock at the completion of what will be an approximately $4.0 million equity funding placing an enterprise value of approximately $30.0 million on www.ad2pos.com-newco in the 2019 time frame.  Endeavor and Anthony Buffa anticipate that www.ad2pos.com-newco's enterprise value will exceed $250 million within 48 months, due to the rapid scalability of www.ad2pos.com-newco on a global basis, and the limited capital needs that the Company will require.

Anthony Buffa's seed investments of approximately $25,000.00 into the senior convertible promissory notes of www.ad2pos.com-newco.

$63,000.00 and growing Litigation Loan Facility for LP III. This investment is basically a venture capital investment into the multifaceted defensive and offensive litigation of an African American individual who worked for Endeavor and Anthony Buffa in the 2002 and 2003 time frames. This individual is a 1992 graduate of West Point having served with distinction in combat in Bosnia and the Balkans in the 1992 and 1993 time frames, and then with promotions to Captain served with distinction in West Germany, eventually commanding a large portion of the US Army's logistics operations in West Germany at the time. LP during his military service completed two masters degrees, one in information sciences and one in international business from the University of Maryland and upon retiring from military service in 1997, pursued and accomplished a Columbia University MBA in finance, completing the degree in less

than 18 months, while working almost full time for Carl McCall the then treasurer of the State of New York focused on analysis and deployment of capital to alternative asset managers. LP was mentored by Carl McCall and Vernon Jordan and upon graduation from Columbia's MBA program LP accepted a position in corporate finance with Lazard, where he was mentored by Vernon Jordan. After two years with Lazard, LP joined the alternative asset business at JP Morgan Chase, prior to founding his own private equity firm in the 2002 time frame, with Endeavor being one of LP's new firm's first clients.

In 2014, LP and his firm were managing approximately $400 million of alternative assets and surprisingly, LP was wrongfully accused of larceny by the District Attorney's office in lower Manhattan of the State of New York, and without trial or proper due process was imprisoned in the Tombs, Rikers Island and an upstate maximum security prison for approximately two calendar years. His guilty plea was effectively coerced and upon release LP re-established contact with Endeavor and Anthony Buffa. Anthony Buffa anticipates that he will invest approximately $500,000 over the next five years in funding the legal expenses of LP's multiple cases, representing future potential damage awards for various nefarious and unjust acts of the DA, SEC, and other private entities and their employees and two racist judges. The payout to Anthony of what is anticipated to be the recovery by LP of valuable and independently appraised stolen equity interests of LP accompanied by breach of contracts, wrongful termination, unjust enrichment, and many other legitimate claims and the additional awards to LP for the extreme abuse of LP's civil rights guaranteed under federal law under the color of state law will yield to LP approximately $75 to $150 million over the next ten years and if realized may provide for Anthony Buffa and Endeavor total gains of approximately $3.0 to $6.0 million based on the preferential repayment of litigation loans held by Anthony Buffa and Endeavor through an approximately 15% participation in all future awards to LP. This does not include Anthony Buffa's future participation in any book, movie or other royalty based compensation that LP is likely to receive in the future given the highly racially charged and completely unjust facts of his cases. In the interest of full disclosure, Anthony Buffa and LP share a NYC studio apartment.

The $10,000.00 senior promissory note issued by Advanced Magnet Labs, Inc. ( AML ) to Anthony Buffa in late calendar 2017.  Endeavor and Anthony Buffa anticipate that AML will revolutionize e-mobility and electric propulsion systems over the next 50 years plus, applying its highly proprietary magnet designs, manufacturing and deployment technology to a myriad of opportunities with globally relevant aircraft and other transportation modes manufacturing partners.

Endeavor ownership of convertible preferred stock in 20/20 Gene Systems, which is estimated to have a value of approximately $1,000.00.

Endeavor accounts receivable of $12,500 from Engineering to Assist You, Tactile Graphics Company, which sells innovative three dimensional sketch pad and learning content products and services to the Blind Community.

Anthony Buffa and Endeavor's contingent equity compensation in the form of out-right equity grants and or equity options, warrants and to be earned and collected during the life of the outstanding time frames of the Notes, in the following enterprises, that are currently under contract to Endeavor, www.biofusemedical.com, www.stemgenics.com, www.jointechlabs.com, and other advisory assignments such as Red Lending, the buyout through a 363 federally sanctioned bankruptcy process of the Weinstein Company tangible and intangible assets, and other in development advisory assignments, the current cash and future equity earnings from which could be substantial.

At present it is important to note that Anthony Buffa and Endeavor other than for a car loan note of $9,500 and under $10,000.00 of to be reimbursed travel expenses are completely debt free. Anthony Buffa's and Endeavor's fully burdened overhead structure including employee compensation, cost of space and administrative support is under $18,000.00 per month, which supports three full time employees, Anthony Buffa, Dr. Peter Walters and Marty Jensen. There are four other professional resources that work as very active advisers to Endeavor, but have at the insistence of Endeavor maintained their full-time employment status with their current employers until such time as it is appropriate and economically justifiable and very risk reduced for these very talented persons to work for and be paid exclusively by Anthony Buffa or Endeavor.

These individuals are Tom Buffa, Roger Hollander, Joseph Lopardo, and Dane James. Endeavor has a broad four decade in maturity network of advisers and consultants that on a variable cost basis can be engaged to rapidly expand Endeavor capabilities on challenging advisory assignments or when operational, financial and strategic advisory services are needed by Anthony Buffa or Endeavor portfolio companies.

Endeavor is currently under contract and working on several advisory assignments with potential current cash fee income of between $250 thousand and $500 that would be paid in calendar 2018, 2019 and 2020. Please note that Anthony Buffa and Endeavor which is now an over 30 year old private investment banking and venture investment firm, have since May of 1980 earned millions of dollars in advisory income, paid mostly in cash but also in stock, with their having been instances in which the cash fee paid to Endeavor for successful accomplishment of a challenging assignment exceeded $1.0 million in a single payment for advisory services rendered.

Exhibit "B"

## Fwd: Confirmation of contractually binding arrangements between Phil Poe, Graciela Slesaransky-Poe as of Monday 10-22-18

From:  Anthony Buffa (anthonybuffa@gmail.com)

To:       philp0e@yahoo.com; brian@jeffries.nu; peter.walters@endeavorcap.com; tabuffa@rcn.com

Date:   Monday, October 22, 2018, 5:34 PM EDT

Please see the underlined corrections to paragraph 2

---------- Forwarded message ---------
From **Anthony Buffa** <anthonybuffa@gmail.com>
Date· Mon, Oct 22, 2018 at 4:10 PM
Subject· Confirmation of contractually binding arrangements between Phil Poe, Graciela Slesaransky-Poe as of Monday 10-22-18
To: Phil Poe <philp0e@yahoo.com>
Cc: Brian Jeffries <brian@jeffries.nu>, Dr. Peter Walters E-mail <peter.walters@endeavorcap.com>, Tom Buffa <tabuffa@rcn.com>


Ciao Graciela and Phi:

The following contractually binding undertakings are being entered into today between you and both Endeavor Capital Management Holdings, LLC, (ECMH) Anthony Buffa and www.ad2pos.com-newco ( a company in formation in Delaware ).

1.  You will advance $25,000.00 to ECMH today, or at latest early tomorrow morning, by wire transfer of good funds, to the JP Morgan Chase account of ECMH in exchange for a $100,000.00 face value promissory note which will be further funded by you on or before Friday 10-26-18, or at the earliest possible time.  The note will be issued by ECMH and personally guaranteed by Anthony Buffa, subject to the full faith and credit of both ECMH and Anthony Buffa.
The note will be similar to those previously issued by ECMH and will be fully binding on ECMH in accordance with the term sheet attached, with a most favored nations clause confirming that you will be receiving more favorable terms if any are confirmed with other investors.

2.  ECMH will commit to pay to you not less than 10% of funds raised from this point forward to repay as early as possible the $100,000 in principal that you are advancing this week to Endeavor  You will continue to enjoy the full benefits of the note being issued to you, even though Endeavor has paid you $100,000 from fundings that it is receiving from other investors.

3  As of March 31, 2019 the $100,000 note that you hold will be exchanged for a new ECMH ten year note described in the attached term sheet.  You may elect to be paid the accrued 12% per anum rate in cash as of 3-31-19 or roll it into the face value of the ten year note referenced above

4.  You are being invited to become a partner of Endeavor and will share in equity upside in all Endeavor portfolio companies at the discretion of Anthony Buffa and to the extent that you make time to contribute to the development of those portfolio companies

5  You will be offered the right to become employed by www.ad2pos.com-new co as the CTO, with a monthly salary of $10,000 or 1099 consulting gig, along with 5% fully diluted of the founding equity of www.ad2pos.com-newco  Ad2pos will have an equity option pool of not less than 15% which you would also be entitled to receive grants based on performance. Other collaborators that you identify and help to recruit to ad2pos, will also be eligible to receive equity based compensation in the ad2pos

6. If and when Endeavor institutes health and well fare benefits forit s employees, you will be entitely to participate in these plans, even if you are already covered other benefit plans

7.  You will also be entitled to receive cash bonus awards based on your contributions to Endeavor and its portfolio companies

8. You will be receiving a more fully built out documents package in the near future, most likely within 90 days, and well prior to the maturity of the first note.

Please call me with any questions that you may have on this document, which is fully binding upon Anthony Buffa and ECMH.

Anthony Buffa, Chairman & CEO and 100% owner of ECMH

Exhibit "C"



# LUNDY BELDECOS & MILBY
—— BUSINESS • REAL ESTATE • TRUSTS & ESTATES ——

July 12, 2019

**VIA EMAIL AND FEDERAL EXPRESS**
Anthony F. Buffa
Endeavor Capital Management Holdings, LLC
45 Rockefeller Plaza, Suite 2000
New York, NY 10111

JESSICA M. GULASH, ESQ.
JGULASH@LBMLAW COM
PHONE (610) 668-0772
FAX (610) 668-7481

**RE: Philip Poe and Graciela Slesaransky-Poe**

Dear Mr. Buffa:

I have been retained by Mr. Philip Poe and Dr. Graciela Slesaransky-Poe to assist in their efforts to recover the $100,000 "investment" made by my clients in Endeavor Capital Management Holdings, LLC ("**ECMH**"). The investment was in the form of senior secured note collateralized by the assets, particularly the portfolio companies, of ECMH (the "**Note**").

On March 31, 2019, my clients made a demand for repayment of the Note which matured and was payable in full along with accrued interest of 12% per annum. To date, my clients have received no payment from ECMH. As such, ECMH has breached the terms of the agreement with respect to the investment and is now in default on the Note. Furthermore, my clients understand that a significant portion of the portfolio has been transferred out of ECMH in a transaction brokered and executed by you and Brian Jeffries, a former representative of ECMH, for the benefit of you, Mr. Jeffries, and others.

### My Clients' Investment

I have spent a significant amount of time with my clients as they recounted the series of troubling conversations had with you and Mr. Jeffries over the last few months. I have also reviewed the various emails exchanged over that same time period. Candidly, it is unclear to me whether the individuals involved in this matter lack a firm grasp of the law regarding investments and contract construction, or alternatively, if you intended to deceive/defraud my clients.

As a matter of law, when one party makes an offer to another party that, in turn, fully performs its side of the bargain, a binding contract is formed. Conversely, if neither

---



party fully performs, there is no contract and any money that was exchanged must be returned. I offer this point of law for the purposes of my clients' investment in ECMH and your claim that you and/or ECMH are not bound by the initial documents you provided to my clients.

Prior to the investment and on September 5, 2019, Mr. Jeffries, as an ECMH representative/employee, sent to my clients a "Memorandum of Terms for the Private Placement of Senior Secured Promissory Notes," which set forth the terms of my clients' investment (the "**Term Sheet**"). The Term Sheet included a specific pledge of ECMH's 60% stake in Zenganic, Inc. ("**Zenganic**") as well as other entities. The Term Sheet also declared that the use of the proceeds was to support specifically Zenganic and its cannabis business. As I understand it, some portion of the $100,000 investment was, in fact, paid to Zenganic. Finally, and in an email dated October 22, 2018 and sent by you, as CEO of ECMH, to my clients with a copy to Mr. Jeffries, Mr. Walters, and Thomas Buffa, you reconfirmed these terms as well as additional incentives in return for my clients' payment of $100,000 (the "**October 22, 2018 Email**").

There is no dispute that my clients paid, and ECMH accepted, $100,000 as evidenced by the wire confirmations, attached hereto as <u>Exhibit "A</u>." This represents acceptance of the terms both you and Mr. Jeffries offered, thereby creating a binding agreement. Any suggestion that the parties are not bound by the terms of both the Term Sheet and the October 22, 2018 Email because you failed to provide a signed promissory note is not only inaccurate and a breach of contract, but criminal larceny to the extent ECMH has not returned $100,000 to my clients. ***As such, demand is hereby made that within 10 calendar days my clients be paid the full amount owed pursuant to such terms.***

For the edification of all parties, please find attached the Term Sheet, as <u>Exhibit "B,"</u> and the October 22, 2018 Email, as <u>Exhibit "C</u>." You will note that pursuant to federal and state securities law and the provisions of the Term Sheet, ECMH has an obligation to disclose its financial status as well as provide adequate information about its portfolio to its investors. My clients will not enter into any non-disclosure or non-circumvention agreement as a condition to ECMH fulfilling its obligations under the law. The failure of ECMH and its representatives to make such disclosures is a violation of securities law. ***As such, demand is also made that within 10 calendar days ECMH provide my clients with full transparency as to what assets are currently held by ECMH, including any transactional documents related to Zenganic.***

## Zenganic

Perhaps more serious than any securities law violation or breach of contract is the self-dealing as it relates to Zenganic, a 60% stake of which was represented by both Mr. Buffa and Mr. Jeffries as being owned by ECMH. Either ECMH's claim that it owned a 60% stake in Zenganic was a material misrepresentation made to further marketing of securities in violation of securities law, or a sale of such stake was made by a principal



and former employee of ECMH to their individual benefit at the detriment of investors, which is embezzlement.

While from what we can gather, you and Mr. Jeffries did misrepresent the ownership stake, it is clear that ECMH was a stakeholder in Zenganic by way of its infusion of $165,000 in cash. These are funds that Zenganic has never paid back and continues to owe ECMH. My clients and I also understand the you signed the lease for the commercial space occupied by Zenganic and were a principal on the bank account of Zenganic.

Attached as Exhibit "D" is a Letter of Intent by and between ECMH and Zenganic (the "**ECMH-Zenganic LOI**") which we understand was provided sometime in November, 2018. Our understanding is that the terms were never agreed or accepted; however, ECMH did provide $165,000 of funding to assist Zenganic, which Zenganic recognizes is a debt owed to ECMH.

Furthermore, it is hard for my clients and I to understand the claim made by Joseph Ryan, who represents himself to be the current CEO of Zenganic, that you and/or ECMH now owe Zenganic hundreds of thousands of dollars as a result of the late penalties stated in the unsigned ECMH-Zenganic LOI. Turning to my aforementioned second point of law, if neither party to a proposed bargain performs or expressly accepts, there is simply no agreement. Zenganic cannot simply take the $165,000 as its own and claim that ECMH must live by an agreement that neither party signed. There is no contract, and the money must be returned to ECMH. It seems to me that the obvious solution to my clients' demand for repayment is for you to seek return of the $165,000 from Zenganic.

*As such, demand is made that within 10 calendar days, ECMH make a demand on behalf of itself and its investors for immediate payment from Zenganic of all monies provided to Zenganic and in the amount of $165,000.*

## Resolution

In summary, my clients demand to receive full payment all that is owed to them pursuant to the terms of the investment.

Of course, after my clients have been repaid in full, they will execute a settlement agreement which will include a release all involved parties from all liability, claims, and causes of action.

 Page 4 of 4

Finally, going forward, please direct all communications regarding this matter to me. Please do not hesitate to contact me if you would like to discuss this matter.

Very truly yours,

JESSICA M. GULASH

JMG/
Attachments.

Copy to (via email): Brian Jeffries
Peter Walters
Thomas Buffa
Philip Poe & Graciela Slesaransky-Poe

JS 44 (Rev 02/19)

# CIVIL COVER SHEET

**19   5379**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM )*

## I. (a) PLAINTIFFS
PHILIP POE  and GRACIELA SLESARANSKY-POE

**DEFENDANTS**
ANTHONY F. BUFFA et al.

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   New York County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE.   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jessica M. Gulash, Esq  - Lundy, Beldecos & Milby, P C
450 N. Narberth Ave., Suite 200, Narberth, PA 19072  (610-668-0772)

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for  Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS —Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
15 U.S.C.A. 78a et seq.

Brief description of cause
Securities fraud and related claims

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P

**DEMAND $**
116,226 28

CHECK YES only if demanded in complaint
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*

JUDGE _____   DOCKET NUMBER _____

NOV 15 2019

DATE
11/14/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| PHILLIP POE et al. | : | CIVIL ACTION **19 5379** |
|---|---|---|
| v. | : | |
| ANTHONY F. BUFFA et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.       ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.       ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (X)

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.       ( )

(e) Special Management ·· Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)       ( )

(f) Standard Management ·· Cases that do not fall into any one of the other tracks.       ( )

| | | |
|---|---|---|
| 11/142019 | | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-668-0772 | 610-668-7481 | jgulash@lbmlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

NOV 15 2019

19-CV-5379

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

19   5379

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____     60 Cornell Road, Bala Cynwyd, PA 19004

Address of Defendant: _____     45 Rockefeller Plaza, Suite 2000, New York, NY 10111

Place of Accident, Incident or Transaction: _____     Bala Cynwyd, Pennsylvania

---

**RELATED CASE, IF ANY:**

Case Number: _____     Judge: _____     Date Terminated _____

Civil cases are deemed related when *Yes* is answered to any of the following questions.

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?     Yes ☐   No ☑

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE 11/14/2019 _____     Must Sign Here     PA 208463
                         *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Patent
☐ 6.  Labor-Management Relations
☐ 7.  Civil Rights
☐ 8.  Habeas Corpus
☑ 9.  Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
        *(Please specify)* _____

**B.**   *Diversity Jurisdiction Cases:*

☐ 1   Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify)* _____
☐ 7   Products Liability
☐ 8   Products Liability – Asbestos
☐ 9.  All other Diversity Cases
        *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ , counsel of record *or pro se plaintiff*, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

NOV 15 2019

DATE: _____     Sign here if applicable     _____
                *Attorney at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38